## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| KENT RICHMOND, individually and on behalf of all others similarly situated, | ) ) ) | C.A. No.: 1:18-cv-11434 |
| Plaintiff, | ) ) | <u>CLASS ACTION</u> |
| v. | ) ) | COMPLAINT FOR VIOLATION OF FEDERAL SECURITIES LAWS |
| MERCURY SYSTEMS, INC., MARK ASLETT, and GERALD M. HAINES II, | ) ) ) | |
| Defendants. | ) ) ) ) | <u>DEMAND FOR JURY</u> |

Plaintiff Kent Richmond ("Plaintiff"), by his attorneys, except for his own acts, which are alleged on knowledge, alleges the following based upon the investigation of counsel, which included a review of United States Securities and Exchange Commission ("SEC") filings by Mercury Systems, Inc. ("Mercury" or the "Company"), as well as regulatory filings and reports, securities analyst reports and advisories by the Company, press releases and other public statements issued by the Company, and media reports about the Company. Plaintiff believes that additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery:

## NATURE OF THE ACTION

1.      This is a securities class action on behalf of all persons who purchased Mercury common stock between October 24, 2017 and April 24, 2018, inclusive (the "Class Period"), seeking remedies under the Securities Exchange Act of 1934 (the "Exchange Act"). Plaintiff's claims are asserted against certain of Mercury's executive officers and directors.

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under §§ 10(b) and 20(a) of the Exchange Act, 15 U.S.C. § 78j(b) and § 78t(a), and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5.

3.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and § 27 of the Exchange Act, 15 U.S.C. §78aa.

4.      This Court has jurisdiction over each Defendant named herein because each Defendant is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by the District Court permissible under traditional notions of fair play and substantial justice.

5.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and § 27 of the Exchange Act because many of the false and misleading statements were made in or issued from this District. Mercury is headquartered in this District, with its principal place of business located at 50 Minuteman Road, Andover, MA 01810.

## PARTIES

6.     Plaintiff Kent Richmond purchased Mercury common stock as set forth herein and in his certification filed herewith.

7.     Mercury is a corporation organized and existing under the laws of the State of Massachusetts. Its common stock trades on the NasdaqGS ("NASDAQ") under the symbol, "MRCY."

8.     Defendant Mark Aslett ("Aslett") has been the President and Chief Executive Officer ("CEO") at all relevant times.

9.     Defendant Gerald M. Haines II ("Haines") was the Chief Financial Officer ("CFO") of Mercury from the beginning of the Class Period to February 2, 2018, when he unexpectedly left the Company.

10.     Aslett and Haines are collectively referred to herein as the "Individual Defendants."

11.     Mercury and the Individual Defendants are collectively referred to herein as "Defendants."

## CONTROL PERSON ALLEGATIONS

12.     By reason of the Individual Defendants' positions with the Company as executive officers, the Individual Defendants possessed the power and authority to control the contents of Mercury's quarterly reports, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors, *i.e.*, the market. The Individual Defendants were

provided with copies of the Company's reports and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions with the Company, and their access to material, non-public information available to them, but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading. The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

13.     Mercury is a commercial provider of defense and intelligence, secure sensor and safety critical mission processing subsystems for defense prime contractors. Mercury is deployed in more than 300 programs, including: Aegis, Patriot, Surface Electronic Warfare Improvement Program ("SEWIP"), Gorgon Stare, Predator, F-35, Reaper, F-16 SABR, E2D Hawkeye and Paveway.

### The Material Misrepresentations and Omissions

14.     The Class Period begins on October 24, 2017, when, after the market closed, Mercury issued a press release, also attached as exhibit 99.1 to the Form 8-K filed with the SEC, announcing the Company's financial and operating results for the first fiscal quarter ended September 30, 2017 ("Q1 2018 Press Release"). For the quarter, the Company's free cash flow was a net inflow of $4.4 million, compared to a net inflow of $4.2 million in the previous year's comparable quarter. The press release stated in relevant part:

> **ANDOVER, Mass. October 24, 2017** Mercury Systems, Inc. (NASDAQ: MRCY, www.mrcy.com), reported operating results for the first quarter of fiscal 2018, ended September 30, 2017.

**Management Comments**

"The first quarter of fiscal 2018 marked a solid start to the year for Mercury," said Mark Aslett, Mercury's President and Chief Executive Officer. "***We continued to deliver strong revenue growth and profitability both in our organic and acquired businesses, validating once again our ongoing strategy***. Our newly added capabilities and ability to generate and capture business synergies should expand our market opportunities and potential for future growth. The strong performance of the business in Q1, coupled with a robust pipeline of new business pursuits is allowing us to increase our full fiscal year 2018 guidance," Aslett concluded.

**First Quarter Fiscal 2018 Results**

Total Company first quarter fiscal 2018 revenues were $106.1 million, compared to $87.6 million in the first quarter of fiscal 2017. The first quarter fiscal 2018 results include an aggregate of approximately $12.6 million of revenue attributable to the CES, Delta Microwave and Richland Technologies acquired businesses.

Emphasis added.

15.     During a conference call to discuss the Company's financial and operating results

for the first fiscal quarter ended September 30, 2017 ("Q1 2018 Conf. Call"), Mercury's CEO,

Defendant Aslett stated in relevant part:

In summary, Mercury's on track for another great year in fiscal 2018. Our business model is working very well. We are taking share and we are seeing high levels of activity based on the investments that we have made and the capability set that we have created. In addition, our planned integration and manufactured synergies are materializing as anticipated.

16.     Regarding the Company's cash flow, Mercury's CFO, Defendant Haines stated in

relevant part:

Turning to the balance sheet. Mercury ended the first quarter of fiscal 2018 with cash and cash equivalents of $26.1 million compared with $41.6 million a year earlier. Mercury's operating cash flow for Q1 of fiscal 2018 was $8 million compared with $10.3 million last year. As in the sequential fourth quarter, our cash flow reflects the continuing buildup of inventory associated with our expanding in-house manufacturing capabilities and the timing of invoicing and collections for certain program activities. This shift is occurring as highly integrated subsystems become a more significant part of

our overall revenue mix. ***Overall, we expect fiscal 2018 to yield stronger cash flows compared to fiscal 2017 as cash flow strengthen through the second half of the year.***

Emphasis added.

17.    On January 23, 2018, Mercury issued a press release, also attached as exhibit 99.1 to the Form 8-K filed with the SEC, announcing the Company's financial and operating results for the second fiscal quarter and six month ended December 31, 2017 ("Q2 2018 Press Release"). For the quarter, the Company's free cash flow was a net inflow of $4.8 million, compared to a net inflow of $6.5 million in the previous year's comparable quarter. The press release stated in relevant part:

> **ANDOVER, Mass. January 23, 2018** Mercury Systems, Inc. (NASDAQ: MRCY, www.mrcy.com), reported operating results for the second quarter of fiscal 2018, ended December 31, 2017.
>
> **Management Comments**
>
> "The second quarter of fiscal 2018 was strong and capped a solid first half of the year for Mercury," said Mark Aslett, Mercury's President and Chief Executive Officer. "Growth was robust both organically and from the contribution of our acquired businesses, again validating the power of our strategy. Mercury continues to execute well, and we look forward to the pending addition of Themis Computer as the next step in the execution of Mercury's strategy to continue penetrating the C4I market," Aslett concluded.
>
> **Second Quarter Fiscal 2018 Results**
>
> Total Company second quarter fiscal 2018 revenues were $117.9 million, compared to $98.0 million in the second quarter of fiscal 2017. The second quarter fiscal 2018 results included an aggregate of approximately $13.0 million of revenue attributable to the CES, Delta Microwave and Richland Technologies acquired businesses.
>
> Total Company GAAP net income for the second quarter of fiscal 2018 was $9.1 million, or $0.19 per share, compared to $5.2 million, or $0.13 per share, for the second quarter of fiscal 2017.

18.     During a conference call to discuss the Company's financial and operating results

for the second fiscal quarter and six month ended December 31, 2017 ("Q2 2018 Conf. Call"),

Mercury's CFO, Defendant Haines stated in relevant part:

> Mercury's operating cash flow for Q2 of fiscal '18 was $8.8 million
> compared with $14.2 million last year. Our cash flow reflects the buildup of
> inventory associated with our expanded in-house manufacturing capabilities
> offset in part by a 9 day decrease in day sales outstanding in Q2 compared to
> Q1. We continue to expect fiscal 2018 to yield stronger cash flows compared
> to fiscal '17 as cash flow strengthened through the second half of the year.
> Cash flow from operations in Q2 was partially offset by $4 million of net
> capital spending. As anticipated, capital expenditures were substantially
> lower than the $7.7 million occurred in Q2 of last year. Net of CapEx, free
> cash flow for Q2 was $4.8 million compared with $6.5 million a year ago. In
> terms of Mercury's financial position, we continue to maintain a conservative
> approach to the balance sheet. *We concluded Q2 well-positioned to continue*
> *executing on our capital deployment strategy supporting future growth*
> *both organically and through acquisitions*. The estimated benefits of tax
> reform further support this deployment strategy.
>
> *          *          *
>
> *Even with the incremental investment in R&D, we expect to see*
> *improvement in our free cash flow for the year as we continue to grow and*
> *our CapEx is reduced versus fiscal '17*. We continue to expect CapEx to be
> modestly higher in the back half of fiscal '18 based on our integration plans
> but for the full year to be consistent with our goal of 5% of revenue or less.

Emphasis added.

19.     The statements in paragraphs ¶14-18 above were materially false and/or misleading

because they misrepresented and failed to disclose the following adverse facts pertaining to the

Company's business, operations, and prospects, which were known to Defendants or recklessly

disregarded by them. Specifically, Defendants made false and/or misleading statements and/or

failed to disclose that: (i) Mercury's decision to in-source processing was adversely impacting

Mercury's operating margins and free cash-flow generation and conversion; (ii) Mercury's model

was becoming structurally more working capital intensive; and (iii) as a result of the foregoing, Mercury's public statements were materially false and misleading at all relevant times.

**The Truth Emerges**

20.     On April 24, 2018, Mercury issued a press release, also attached as exhibit 99.1 to the Form 8-K filed with the SEC, announcing the Company's financial and operating results for the third fiscal quarter and nine month ended March 31, 2018 ("Q3 2018 Press Release"). For the quarter, the Company's free cash flow was a net *outflow* of $2.6 million, compared to a net inflow of $11.9 million in the previous year's comparable quarter. The press release stated in relevant part:

> **ANDOVER, Mass. April 24, 2018** Mercury Systems, Inc. (NASDAQ: MRCY, www.mrcy.com), reported operating results for the third quarter of fiscal 2018, ended March 31, 2018.
>
> **Third Quarter Fiscal 2018 Results**
>
> Total Company third quarter fiscal 2018 revenues were $116.3 million, compared to $107.3 million in the third quarter of fiscal 2017. The third quarter fiscal 2018 results included an aggregate of approximately $15.7 million of revenue attributable to the Delta Microwave, Richland Technologies and Themis Computer acquired businesses.
>
> Total Company GAAP net income for the third quarter of fiscal 2018 was $3.7 million, or $0.08 per share, compared to $7.0 million, or $0.16 per share, for the third quarter of fiscal 2017. Adjusted earnings per share ("adjusted EPS") was $0.30 per share for the third quarter of fiscal 2018, compared to $0.29 per share in the third quarter of fiscal 2017.
>
> Third quarter fiscal 2018 adjusted EBITDA for the total Company was $25.8 million, compared to $25.0 million for the third quarter of fiscal 2017.
>
> Cash flows from operating activities in the third quarter of fiscal 2018 was a net inflow of $0.9 million, compared to a net inflow of $24.9 million in the third quarter of fiscal 2017. ***Free cash flow, defined as cash flow from operating activities less capital expenditures, was a net outflow of $(2.6) million in the third quarter of fiscal 2018, compared to a net inflow of $11.9 million in the third quarter of fiscal 2017. The lower cash flow in the***

**quarter was primarily a result of our continued investment in the business as we insource our manufacturing and integrate our acquisitions.**

Emphasis added.

21.     During a conference call to discuss the Company's financial and operating results for the third fiscal quarter and nine month ended March 31, 2018 ("Q3 2018 Conf. Call"), analyst Ronald Epstein from Bank of America Merrill Lynch inquired about Mercury's operating margins and cash position, to which Defendant Aslett and Mercury new CFO Michael D. Ruppert ("Ruppert") responded that Mercury was in fact facing an "*issue*" with cash for the last three quarters:

**Ronald Epstein**

Hi, good evening guys. *So how many operating margins like cut in half, maybe not quite 60% of what they were – how sequentially quarter-over-quarter or year-over-year, I mean what happened there, like I don't get that, I understand the top-line growth, but it's not profitable and there's no cash, so help me understand why this is good?*

**Mark Aslett**

So if you look at the – actually learnings of the working capitals off, right in terms of Q3, because I think we hit it only in the prepared remarks, Ron.

**Mike Ruppert**

*Yes, so Ron, maybe we start with cash, because that's clearly an issue that we want to be able to explain both for the first three quarters and for Q3.* So if you look at what happened in the first three quarters, the biggest use of cash was what Mark talked about, it was the inventory by far. And the second was accounts receivable, and in Q3 we had two things if you look at the balance sheet on that the accounts receivable. We see that AR increased in Q3 by $14 million, $6 million of that was from Themis, $8 million was from an organic increase. And that was really driven primarily by the back end nature of the quarter due to the extended CR that Mark talked about that reduced the in quarter collections and thereby increased AR at the quarter end. So we actually saw a cash outflow of close to $10 million in Q3 associated with AR.

Emphasis added.

22.     Moreover, in an attempt to justify the poor financial performance, Michael D. Ruppert disclosed how Mercury was aware for the "***last couple quarters***" of (1) customer trends in managing cash in their accounts payable and (2) Mercury's need to reduce account payables related to its inventory builds, both directly impacting Mercury's cash flow for its third fiscal quarter and nine month ended March 31, 2018:

> ***And what we've also seen over the last couple quarters***, and as I've come in, it's one of the things that that I'm focused on where I think we've got good opportunity, ***is if you look at accounts receivable for the first three quarters of the year, we did see an increase in Q1 and Q2 as well, as our DSOs grew disproportionately to revenues, so AR grew with revenue, but DSOs grew as well. And the primary driver of that that we saw was towards the end of the year or so our customers' fiscal year, the calendar year 12/31 or Q2 was our customers are really managing their cash in their AP at the end of the year***. And if you look to Q1 and Q2, we saw an uptick in average days late from our customers that drove DSOs higher. So we think there's a lot of opportunity to reduce DSOs going forward. We've seen the actions of our customers in terms of late payments have already started to ameliorate someone. So we expect DSOs to go down.

> The third thing that you saw this quarter from the cash perspective was accounts payable. ***And so accounts payable went down by about $10 million and that that increase is related to the increase in inventory over the last quarter, so inventories now increased significantly over the first half of the fiscal year, that slowed in Q3 as we talked about and we expect the inventory turns as Mark said to improve going forward***. But this quarter we reduced the AP associated with those inventory builds.

Emphasis added.

23.     Ronald Epstein then inquired specifically about Mercury's rather unpredictable level of free cash flow, to which Defendant Aslett and Michael D. Ruppert responded that Mercury would not begin to see "***improvements***" until the 2019 fiscal year:

**Ronald Epstein**

When would you expect to see free cash flow as a percentage of net income get back to a level of 80% something like that. ***Most defense companies have***

*pretty predictable free cash flow, so when will we expect that to happen for you guys?*

**Mark Aslett**

So we expect that I mean, if you look at the inventory, it's already basically declined a little bit quarter-over-quarter. So what I mentioned is, I was talking about the journey that we're on, one year, two year or three, year three is really where we're focused on the optimization right, we're still in the build phase of all the ramp face of getting that USMO up and running. ***So fiscal 2019, we should begin to see the improvements in EBITDA to free cash flow run.***

Emphasis added.

24.     On this news, Mercury's stock price declined $8.02, ***or nearly 18.68%***, from a close of $42.93 per share on April 24, 2018, to a close of $34.91 on April 25, 2018.

25.     Following the Q3 2018 Conf. Call, Bank of America Merrill Lynch issued a double downgrade on Mercury from a Buy rating to Underperform, cutting the price target from $50 to $35.

## ADDITIONAL SCIENTER ALLEGATIONS

26.     As alleged herein, Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, Defendants, by virtue of their receipt of information reflecting the true facts regarding Mercury, their control over, and/or receipt and/or modification of Mercury's allegedly materially misleading statements and/or their associations with the Company which made them privy to confidential proprietary information concerning Mercury, participated in the fraudulent scheme alleged herein.

## LOSS CAUSATION

27.     During the Class Period, as detailed herein, Defendants made false and misleading statements and engaged in a scheme to deceive the market and a course of conduct that artificially inflated the price of Mercury's common stock and operated as a fraud or deceit on Class Period purchasers of Mercury common stock by materially misleading the investing public. Later, when Defendants' prior misrepresentations and fraudulent conduct became apparent to the market, the price of Mercury's common stock fell precipitously, as the prior artificial inflation came out of the price over time. As a result of their purchases of Mercury common stock during the Class Period, Plaintiff and other members of the Class suffered economic loss, *i.e.*, damages, under the federal securities laws.

## APPLICATION OF PRESUMPTION OF RELIANCE:
## FRAUD-ON-THE-MARKET DOCTRINE

28.     At all relevant times, the market for Mercury's common stock was an efficient market for the following reasons, among others:

a)     Mercury common stock met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

b)     Mercury filed periodic public reports with the SEC and the NASDAQ; and

c)     Mercury regularly communicated with public investors via established market communication mechanisms, including regular disseminations of press releases on the national circuits of major newswire services and other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services.

29.     As a result of the foregoing, the market for Mercury's common stock promptly digested current information regarding Mercury from all publicly available sources and reflected such information in the prices of the common stock. Under these circumstances, all purchasers of

Mercury common stock during the Class Period suffered similar injury through their purchase of Mercury common stock at artificially inflated prices and a presumption of reliance applies.

## NO SAFE HARBOR

30.    The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Mercury who knew that the statement was false when made.

## CLASS ACTION ALLEGATIONS

31.    Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons who purchased or otherwise acquired Mercury common stock during the Class Period (the "Class"). Excluded from the Class are Defendants and their families, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

32.     The members of the Class are so numerous that joinder of all members is impracticable, since Mercury has millions of shares of stock outstanding and because the Company's shares were actively traded on the NASDAQ. As of April 30, 2018, Mercury had more than 48.1 million shares issued and outstanding. While the exact number of Class members in unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are thousands of members in the proposed Class and that they are geographically dispersed.

33.     There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members, including:

(a)     whether the Exchange Act was violated by Defendants;

(b)     whether Defendants omitted and/or misrepresented material facts in their publicly disseminated reports, press releases, and statements during the Class Period;

(c)     whether Defendants' statements omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

(d)     whether Defendants participated and pursued the fraudulent scheme or course of business complained of herein;

(e)     whether Defendants acted willfully, with knowledge or recklessly in omitting and/or misrepresenting material facts;

(f)     whether the price of Mercury common stock was artificially inflated during the Class Period as a result of the material nondisclosures and/or misrepresentations complained of herein; and

(g)     whether the members of the Class have sustained damages as a result of the decline in value of Mercury's stock when the truth was revealed, and if so, what is the appropriate measure of damages.

34.     Plaintiff's claims are typical of those of the Class because Plaintiff and the Class sustained damages from Defendants' wrongful conduct in a substantially identical manner.

35.     Plaintiff will adequately protect the interests of the Class and has retained counsel who are experienced in class action securities litigation. Plaintiff has no interests which conflict with those of the Class.

36.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## CLAIMS FOR RELIEF

### COUNT I
### Violation of Section 10(b) of
### the Exchange Act and SEC Rule 10b-5
### (Against All Defendants)

37.     Plaintiff incorporates by reference each and every preceding paragraph as though fully set forth herein.

38.     This Count is asserted by Plaintiff on behalf of themselves and the Class against all the Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. C 240.10b-5, promulgated thereunder.

39.     During the Class Period, Defendants carried out a plan, scheme, and course of conduct that was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Mercury's common stock; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Mercury's common stock at artificially inflated prices. In

furtherance of this unlawful scheme, plan, and course of conduct, the Defendants, and each of them, took the actions set forth herein.

40.     Defendants, by the use of means and instrumentalities of interstate commerce: (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements made not misleading; and (iii) engaged in acts, practices, and a course of business that operated as a fraud and deceit upon the purchasers and acquirers of the Company's common stock in an effort to maintain artificially high market prices for Mercury's common stock in violation of Section 10(b) of the Exchange Act and Rule 10-5.

41.     As a result of their making and/or their substantial participation in the creation of affirmative statements and reports to the investing public, Defendants had a duty to promptly disseminate truthful information that would be material to investors in compliance with the integrated disclosure provisions of the SEC, as embodied in SEC Regulation S-K (17 C.F.R. § 229.10, et seq.) and other SEC regulations, including accurate and truthful information with respect to the Company's operations and performance so that the market prices of the Company's publicly traded common stock would be based on truthful, complete, and accurate information. Defendants' material misrepresentations and omissions as set forth herein violated that duty.

42.     Defendants engaged in the fraudulent activity described above knowingly and intentionally or in such a reckless manner as to constitute willful deceit and fraud upon Plaintiff and the Class. Defendants knowingly or recklessly caused their reports and statements to contain misstatements and omissions of material fact as alleged herein.

43.     As a result of Defendants' fraudulent activity, the market price of Mercury was artificially inflated during the Class Period.

44.     In ignorance of the true financial condition of Mercury, Plaintiff and other members of the Class, relying on the integrity of the market and/or on the statements and reports of Mercury containing the misleading information, purchased or otherwise acquired Mercury's common stock at artificially inflated prices during the Class Period.

45.     Plaintiff and the Class's losses were proximately caused by Defendants' active and primary participation in Mercury's scheme to defraud the investing public by, among other things, failing to fully and accurately disclose to investors adverse material information regarding the Company. Plaintiff and other members of the Class purchased Mercury's stock in reliance on the integrity of the market price of that common stock, and Defendants manipulated the price of Mercury's common stock through their misconduct as described herein. Plaintiff's and the Class's losses were a direct and foreseeable consequence of Defendants' concealment of the true financial condition of Mercury.

46.     Throughout the Class Period, Defendants were aware of material non-public information concerning Mercury fraudulent conduct (including the false and misleading statements described herein). Throughout the Class Period, Defendants willfully and knowingly concealed this adverse information, and Plaintiff's and the Class's losses were the foreseeable consequence of Defendants' concealment of this information.

47.     As a direct and proximate cause of the Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their respective purchases and sales of Mercury common stock during the Class Period.

## COUNT II
### Violation of Section 20(a) of the Exchange Act
### (Against the Individual Defendants)

48.     Plaintiff incorporates by reference and realleges each and every allegation above as though fully set forth herein.

49.     During the Class Period, the Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board of Directors meetings and committees thereof and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew or recklessly disregarded the fact that adverse facts specified herein had not been disclosed to, and were being concealed from, the investing public. Plaintiff and other members of the Class had no access to such information, which was, and remains solely under the control of the Defendants.

50.     The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein. The Individual Defendants were aware (or recklessly disregarded) that materially false and misleading statements were being issued by the Company and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws. Throughout the Class Period, the Individual Defendants were able to, and did, control the contents of the Company's SEC filings, reports, press releases, and other public statements. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed such filings, reports, releases and other statements prior to or shortly after their issuance and had the ability or opportunity to prevent their issuance or to cause them to be corrected.

51.     The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Mercury's business, the information contained in its filings with the SEC, and its public statements. Moreover, the Individual Defendants made or directed the making of affirmative statements to securities analysts and the investing public at large, and participated in meetings and discussions concerning such statements. Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public and that the positive representations that were being made were false and misleading. As a result, the Individual Defendants are responsible for the accuracy of Mercury's corporate releases detailed herein and is therefore responsible and liable for the misrepresentations contained herein.

52.     The Individual Defendants acted as controlling persons of Mercury within the meaning of Section 20(a) of the Exchange Act. By reason of their position with the Company, the Individual Defendants had the power and authority to cause Mercury to engage in the wrongful conduct complained of herein. The Individual Defendants controlled Mercury and all of its employees. As alleged above, Mercury is a primary violator of Section 10(b) of the Exchange Act and SEC Rule 10b-5. By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

53.     As a direct and proximate result of the wrongful conduct of Mercury and the Individual Defendants, Plaintiff and members of the Class suffered damages in connection with their respective purchases and sales of the Company's common stock during the Class Period.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment as follows:

(A)     Declaring this action to be a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure and certifying Plaintiff as a representative of the Class and her counsel as Class counsel;

(B)     Awarding Plaintiff and the members of the Class damages, including interest;

(C)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including and attorneys' fees; and

(D)     Awarding such equitable/injunctive or other relief as the Court may deem just and proper

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: July 10, 2018.                              Respectfully submitted,


                                                   */s/Shannon L. Hopkins*
                                                   **LEVI & KORSINSKY LLP**
                                                   Shannon L. Hopkins (BBO# 657485)
                                                   shopkins@zlk.com
                                                   733 Summer Street, Suite 304
                                                   Stamford, Connecticut 06901
                                                   Tel.: (203) 992-4523
                                                   Fax: (212) 363-7171

                                                   *Counsel for Plaintiff*